IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  13-cv-00497-LTB

AURORA COMMERCIAL CORP.

       Plaintiff,

v.

PMAC LENDING SERVICES, INC.
f/k/a PREFERRED MORTGAGE ALLIANCE CORP.,

       Defendant.

_____

ORDER
_____

This matter is before me on Defendant PMAC Lending Services, Inc.'s, Motion to

Dismiss **[Doc #8]**.  After consideration of the parties' arguments, and for the reasons stated

below, I grant in part and deny in part Defendant's Motion to Dismiss.

## I.  FACTS

The background facts of the case are presented as they appear in Plaintiff's Complaint

(Doc. # 2, Ex. 3), unless otherwise noted.  Plaintiff Aurora Commercial Corp ("ACC") alleges

that Defendant "engaged in the sale of residential mortgage loans on the secondary market to

investors such as Plaintiff."  [*Id.* at ¶ 5].  Plaintiff alleges that it entered into a Loan Purchase

Agreement with Defendant and "[a]mong other loans sold by Defendant to Plaintiff," were the

seven loans at issue here ("Loans").  [*Id.* at ¶ 6(a)-(g)].  Under the Loan Purchase Agreement,

Plaintiff contends that Defendant "made several representations and warranties with respect to

the Loans, including that: (1) the supporting loan documents and materials contain no false information or material omission; (2) no fraud was committed in connection with originating the Loans; (3) Defendant confirmed the accuracy of all materials in the Loan files; and (4) Defendant originated the Loans in compliance with the applicable guidelines." [Doc. # 13, 3 (citing the Complaint)].  Plaintiff alleges that Defendant has breached the Loan Purchase Agreement with regards to the Loans at issue, and that Defendant, pursuant to the terms of the Loan Purchase Agreement, has "refus[ed] or otherwise fail[ed] to repurchase the loans [and/or] refus[ed] to indemnify Plaintiff for losses arising from or related to the Loans." [Doc. # 2, Ex. 3, ¶ 23].

On January 16, 2014, I granted Plaintiff's ACC's Motion for Substitution of Party to allow Plaintiff ACC to be substituted for former Plaintiff Aurora Bank, FSB.  [*See* Doc. # 24]. Defendant's Motion to Dismiss contends that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff has failed to demonstrate standing and pursuant to Fed. R. Civ. P. 12(b)(6) for various reasons including failure to state a claim.

## II.  STANDARDS OF REVIEW

### A.      Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  A Fed. R. Civ. P. 12(b)(1) motion to dismiss "must be determined from [the] allegations of fact in [the] complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power &  Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  Once subject matter jurisdiction is

challenged, the plaintiff bears the burden of proving it exists by a preponderance of the evidence. *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject-matter jurisdiction, the court may make its own findings of fact. *Id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56. *Id.* (the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)"); *see also New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995). Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Tippet v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

**B.     Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell*

*v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a [party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 556 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.; see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 556).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012)(*quoting Iqbal*, 556 U.S. at 677).

### III. DISCUSSION

Defendant's motion has four parts. First, Defendant argues that I lack subject matter jurisdiction over Plaintiff's claims because Plaintiff does not have standing. Second, Defendant argues that Plaintiff's claims should be dismissed because Plaintiff fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Third, Defendant argues that Plaintiff "improperly combin[ed] seven different claims for alleged breaches of multiple loans into a single claim for breach of

4

contract and breach of warranties." [Doc. # 8, p. 4]. Fourth, Defendant contends that Plaintiff's breach of implied covenant of good faith and fair dealing claim be dismissed as duplicative.

**A.      Standing**

Defendant asserts that I lack subject matter jurisdiction over this case because Plaintiff does not have standing. Specifically, Defendant contends that Plaintiff has not demonstrated that it has suffered an injury nor that Defendant was a cause of injury.

As an Article III court, my jurisdiction is limited by the Constitution to "cases and controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As such, I must determine whether the dispute, as framed by the parties, presents a justiciable controversy. *Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004). The primary concerns regarding justiciability focus on the twin questions of whether a plaintiff has standing to maintain this action and whether the case is ripe for judicial review. *Id.*

Defendant contends that Plaintiff does not have standing. "Foremost among the well-established elements of a justiciable controversy is the requirement that the plaintiff have standing to maintain the suit." *McCotter*, 365 F.3d at 887 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Article III standing has three requirements:

> First, the plaintiff must suffer an injury in fact. An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical. A plaintiff must also demonstrate that the harm complained of is fairly traceable to defendant's conduct and that a favorable ruling from the court would redress plaintiff's injury.

*McCotter*, 365 F.3d at 887-88 (citations omitted). "Thus, a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or

even probability, of future injury." *Id.*

Because Defendant raised standing, this argument is addressed under Fed. R. Civ. P. 12(b)(1), under which I may examine documents outside of the complaint to establish whether the Plaintiff has standing. *See Holt*, 46 F.3d at 1002-03.

Defendant first contends that Plaintiff failed to demonstrate an adequate injury because: (1) it failed to prove the existence of the alleged contract between the parties; (2) failed to demonstrate injury from the alleged misrepresentations resulting in the breach; and (3) failed to provide a causal connection between the alleged misrepresentations and the alleged injuries Plaintiff suffered.  Defendant's argument is without merit.

Here, based on Plaintiff's Complaint, the documents provided by Defendant (Doc. # 8, ex. A), and on my previous order allowing substitution of Plaintiff ACC for former Plaintiff Aurora Bank FSB (Doc. # 24), Plaintiff has established standing.  Defendant provides a contract between Defendant and Aurora Loan Services ("ALS"), as well as several contracts between Defendant and Lehman Brothers Bank, FSB, and argues that "PMAC never entered into a Loan Agreement with Plaintiff.  Instead with regard to the seven loans in question, there exists an agreement between PMAC and [ALS]."  [Doc. # 8, p. 3].

With regards to the first contract Defendant provided between Defendant and ALS (Doc. # 8, Ex. A, pp. 2-4), while the heading provides that it is a contract between Defendant and ALS, Section 14 of the agreement provides that ALS is an affiliate of Lehman Brothers Bank, FSB. [*See id.* at 4].  The subsequent contracts Defendant provided are all between Lehman Brothers Bank, FSB and Defendant PMAC. [*See id.* at 5-12].  Additionally, the last document in Defendant's Exhibit A is a "Dual Agreement Authorization" signed by Defendant which

6

provides that:

> In addition to the material being provided to you by Aurora Loan Services, in connection with your application to become a Correspondent, you will also find enclosed a separate Agreement which names Lehman Brothers Bank, FSB as the Lender. Aurora Loan Services, Inc., is an affiliate of Lehman Brothers Bank, which is also in the business of making mortgage loans. In some instances, Lehman Brothers Bank, FSB, may be in a position to purchase a loan which Aurora Loan Services would not be able to purchase. This would be a "seamless" transaction from you and your client's perspective.
>
> In order to accomplish this goal, Aurora Loan Services is requiring that you execute and return, along with all of the other material you are submitting to Aurora Loan Services, the Correspondent Agreement between your firm and Lehman Brothers Bank, FSB.
>
> In order for Lehman Brothers Bank, FSB to do business with you, Lehman Brothers Bank will need to do a separate approval of your correspondent application. Rather than have you complete two separate applications containing the same information you are already supplying Aurora Loan Services, Aurora Loan Services will provide Lehman Brothers Bank with all application, compliance, quality control reports, agency review information, Insurance and other information that Aurora Loan Services receives from you in connection with your application to become a correspondent of Aurora Loan Services (the "Correspondent Application File"). Accordingly, by countersigning a copy of this letter, you (i) authorize and direct Aurora Loan Services to provide your Correspondent Application File to Lehman Brothers Bank, FSB, and (ii) represent, warrant, covenant and agree with Aurora Loan Services and Lehman Brothers Bank, FSB, as follows . . .

[*Id.* at 13]. This Exhibit alone demonstrates that a contract existed between Lehman Brothers Bank, LSB and Defendant PMAC. On January 16, 2014, I granted Plaintiff ACC's motion allowing substitution of itself for former Plaintiff Aurora Bank, FSB. In that order, I found that Plaintiff had adequately established that it was a successor in interest to Aurora Bank, FSB, which had formerly been Lehman Brothers Bank, FSB. [*See* Doc. # 24, p. 3]. Plaintiff ACC has adequately demonstrated that a contract did in fact exist between it, as a successor in interest, and Defendant PMAC. Because a contract existed and Plaintiff contends that contract was

breached, these claims are adequate to establish an injury and causation sufficient to demonstrate that Plaintiff has standing.  *See McCotter*, 365 F.3d at 887-88 ("Plaintiff must [] demonstrate that the harm complained of is fairly traceable to defendant's conduct and that a favorable ruling from the court would redress plaintiff's injury.")

Accordingly, with regards to Defendant's standing argument, its motion to dismiss is denied.

**B.      Defendant's Remaining Arguments Pursuant to Fed. R. Civ. P. 12(b)(6)**

Defendant argues that pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's "complaint must be dismissed for failing to provide any meaningful details about the specific loans."  [Doc. # 8, 6]. Specifically, Defendant contends that Plaintiff "has not alleged any facts to demonstrate that any of the representations made by PMAC were untruthful," and that Plaintiff has not "alleged any facts to show the alleged misrepresentations by PMAC 'materially and adversely' affected the loans."  [*Id.* at 6-7].  However, as Plaintiff correctly contends, Defendant's argument is without merit.

As discussed above, when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.  *Teigen*, 511 F.3d at 1078. Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949.  Here, Plaintiff satisfied this standard when it specifically provided the loans at issue in its Complaint, and separately identified eight different representations Defendant made with respect to loans sold under the Parties' Loan Purchase Agreement.  [*See* Doc. 2, Ex. 3, pp. 3-10].

Additionally, Plaintiff identifies the alleged misrepresentations made by Defendant with respect to each of the loans at issue.  [*Id.*]  This satisfies the pleading requirements under Fed. R. Civ. P. 8 by providing an adequate, short, and plain statement of Plaintiff's entitlement to relief.  *See* Fed. R. Civ. P. 8.  Thus, I will not dismiss Plaintiff's claims on these grounds.

Defendant also argues that Plaintiff's Complaint "improperly combin[es] seven different claims for alleged breaches of multiple loans into a single claim for breach of contract and breach of warranties." [Doc. # 8, 4].  In support of its argument Defendant points to a case from the Southern District of Florida, *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.*, 11-cv-20859-JLK (Doc. # 8, Ex. C, pp. 2-4), and contends that "the plaintiff's complaint presented the same fundamental problems presented in this case," and that, "[t]he court in [that case] dismissed the complaint and ruled that in order to 'promote clarity and facility adjudication of Plaintiff's claims,' Lehman Brothers had to 'separate into individual counts each alleged instance of breach of contracts as to each individual loan.'" [*Id.*]

Tthis argument is also without merit.  Defendant's reliance on *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.* is misplaced.  First, the case was at the summary judgment stage, where the court, after completing extensive discovery, concluded that the "lack of commonality among the various factual circumstances pertinent to each of the eight individual loans makes them all but impossible to be adjudicated together."  [Doc. # 8, Ex. C, pp. 2-3].  The court made such a finding only after discovery had been completed, and based upon all the facts in evidence.  In contrast, making such a finding here, without discovery, and on a limited factual basis would be improper.  *See Franklin Sav. Corp.*, 180 F.3d at 1129 (10th Cir. 1999); *Tippet*, 108 F.3d at 1196.  Second, the court did not dismiss all of the claims, as Defendant contends, but

instead severed the claims, permitted the Plaintiff to re-file the separate claims, and directed that such re-filed claims would relate back to the date of filing of Plaintiff's original Complaint. [*Id.* at 3]  As to the single claim the court retained, the court required supplemental briefing on the "issue of the proper interpretation of the contract between the parties." [*Id.*]  Again, making such a determination at the motion to dismiss stage would be improper.

Additionally, in Defendant's Reply in Support of its Motion to Dismiss (Doc. # 13), Defendant argues that recently, "Judge Christine M. Arguello applied Judge King's ruling in *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, 13-cv-000087-CMA-MJW (Apr. 17, 2013)." [Doc. # 13, 4].  Again, I emphasize that Judge Arguello applied Judge King's ruling in the context of a motion to consolidate the cases Judge King had previously severed. [*See* Doc. # 14, Ex. 3, p. 4].  In denying the motion to consolidate, Judge Arguello explained that "Judge King, after considering voluminous discovery and cross-motions for summary judgement, previously severed this case." [*Id.*]  Here, granting Defendant's motion at this stage would be improper because, at the motion to dismiss stage Plaintiff must only show that a "claim to relief that is plausible on its face," *Iqbal*, 129 S.Ct. at 1949, which, as discussed above, Plaintiff has done.

Lastly, Defendant argues that Plaintiff's "breach of implied covenant of good faith and fair dealing claim must be dismissed as [it] is merely duplicative of Plaintiff's breach of contract claim." [Doc. # 8, 9].  Plaintiff contends that while it "believes it has enough facts to support such a claim," Plaintiff "is not opposed to dismissing [the] claim *without prejudice* pending further discovery." [Doc. # 12, 13 (emphasis in original)].  Because I agree with Defendant's argument, I dismiss Plaintiff's Good Faith and Fair Dealing Claim under New York Law. *See*

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 894 N.Y.S.2d 47, 49-50 (N.Y.A.D. 1 Dept. 2010) (holding that a claim that defendants breached their implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach of contract claim as both claims arose from the same facts).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (**Doc. # 8**), is granted as to Plaintiff's good faith and fair dealing claim, which is dismissed without prejudice, and otherwise denied.


Dated: March __5__, 2014, in Denver, Colorado.



BY THE COURT


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE

11